JUDGE SCHOFIELD

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

Mr. Draper L Mitchell,
160 Madison Street, 6E
New York, NY 10002
mitchell.draper@icloud.com
(347) 815-3729,

        Plaintiff,

    V.

New York Graphics Studio, Inc.
256 East 135th Street, 2r
Bronx, NY 10454
(347) 577-5130
(347) 364-8340
jamie@nygstudio.com
nygstudio@gmail.com,

Kama New York, Inc.
256 East 135th Street, 2r
Bronx, NY 10454
(347) 458-2675
kama.noble@gmail.com,

John Doe,

Jane Doe,

        Defendants.

DATE: October 22, 2018

# 18 CV 9690

**CASE NO.:**

## COMPLAINT

JURY DEMANDED

Draper L Mitchell, complaining of New York Graphics Studio, Inc. ("**NYG Studio**"), Kama New York, Inc. ("**Kama NY**"), John Doe ("**Mr. Doe**"), and Jane Doe ("**Ms. Doe**") respectfully shows and alleges to this Court as follows:

## PRELIMINARY STATEMENT

**1.** Draper L Mitchell brings this action seeking a declaratory judgment for sole copyright authorship and to obtain remedy and compensation for the Owners' willful and gross negligence in the action brought before this Court.

**2.** Draper L Mitchell is originally from South Carolina and made what was a temporary move to New York City during May of 2011 to obtain a Bachelor's degree in business administration. Upon information and belief, at a period of at least two (2) year before the aforesaid date, Plaintiff's phone and internet browsing activity, inter alia, was and is being monitored by an unknown entity. During the duration of Plaintiff's time in New York City, such monitoring has taken on the form of a hub-and-spoke conspiracy in an effort to regulate Plaintiff's participation in commerce.

**3.** NYG Studio was a custom screen printing and graphic design studios. The corporation was formed on April 27, 2010 and is currently dissolved by proclamation of the Secretary of State.

**4.** Kama NY was a corporation formed on July 2, 2010 and is currently dissolved by proclamation of the Secretary of State. Upon information and belief Kama NY was a custom screen printing and graphic design studio.

## JURISDICTION AND VENUE

**5.** This is a civil action seeking a declaratory judgment for the ownership and sole authorship of the Plaintiff under the Copyright Act of the United States U.S. Copyright Act, 17 U.S.C. §§ 101 et seq., injunctive relief, and the award of damages and fees.

**6.** This request for a declaratory judgment for the ownership and sole authorship of the Plaintiff is proper pursuant to 28 U.S. Code § 2201.

**7.** This request for injunctive relief and the award of fees is proper pursuant to 28 U.S. Code § 2202.

**8.** This Court has subject matter jurisdiction over this request for a declaratory judgment for sole authorship of a copyright pursuant to 28 U.S.C. §§ 1331 and 1338(a)(b).

**9.** Venue is proper in this district pursuant to 28 U.S.C. § 1391.

## PARTIES

**10.** Draper L Mitchell ("**Plaintiff**") resided at 306 E 169th Street, Bronx, New York ("**Residence**") on November 11, 2011.

**11.** New York Graphics Studio, Inc. and Kama New York, Inc. (the "**Companies**") are the legal names under which the business activities of the aforesaid Companies were conducted on November 11, 2011. The business operation of the Companies was based out of a commercial space, located at 256 East 135th Street, Suite 2r, Bronx, New York (the "**Location**"). Upon information and belief, the Companies were duly licensed to conduct business in the State of New York and the true names of the respective owners of the Companies are Jamilla Jones and Omar Noble (the "**Owners**").

**12.** Mr. Doe is of the male gender and upon information and belief, is of Caucasian decent and between the ages of eighteen and twenty-five years old as of the filing of this Complaint. On November 17, 2011, Mr. Doe stood approximately five feet and five inches in height. Upon information and belief, Ms. Doe is of the female gender, however, a physical description cannot be provided by the Plaintiff. The only interaction between the Plaintiff and Ms. Doe was a phone call received by Plaintiff, from an unknown number on October 10, 2016 at 6:01pm. The careless and willfully negligent behavior of the Owners, calls into question, the true involvement of Mr. Doe and Ms. Doe (the "**Doe-Defendants**"). The true names of the Doe-Defendants are unknown to Plaintiff, who therefore listed the aforesaid Doe-Defendants by such fictitious names. If necessary, Plaintiff will seek leave of Court to amend this Complaint to disclose the true names of the Doe-Defendants when they have been ascertained.

## FACTUAL ALLEGATIONS

**13.** On November 11, 2011, Plaintiff contacted NYG Studio to inquire about its services (the "**Initial Contact**"). During the Initial Contact, Plaintiff spoke with Ms. Jones in regards to producing an electronic graphic file (the "**Service**") of a "logo" designed by Plaintiff. In turn, Ms. Jones stated that Plaintiff would need to come to the Location to discuss the details of the request. It should be noted that at this specific point of the timeline of events brought before this Court, Ms. Jones had not mentioned anything that would've elicit the idea of another business operating at the Location.

**14.** Plaintiff arrived at the Location on November 17, 2011, only to find Mr. Noble and Mr. Doe. Plaintiff requested to speak to Ms. Jones, however, Mr. Noble replied that Ms. Jones was unavailable. Mr. Noble also stated that Ms. Jones was the daughter of Mr. Noble and that Mr. Noble could help Plaintiff. In turn, Plaintiff discussed the Service with Mr. Noble.

**15.** Plaintiff and Mr. Noble entered into a verbal agreement for which a payment in full would be provided before commencement of the Service. At the time of filing this Complaint, the amount of the Payment is unclear; however, upon information and belief, the amount of the aforesaid Payment is or about eighty dollars ($80.00) (the "**Payment**").

**16.** After providing Mr. Noble with the Payment, Plaintiff created a drawing which

- 3 -

depicted a compilation of previously existing art and instructed Mr. Noble (the "**Authorization**") on the precise placement of each individual element and coloring (the "**Work**"). Plaintiff informed Mr. Noble that Plaintiff would send Mr. Noble an email which contained the exact shape that would be incorporated into the Work upon returning to the Residence. On November 17, 2011 at approximately 2:25pm, Plaintiff emailed an electronic graphic file which contained the aforesaid overall shape of the logo to Mr. Noble via the business email contact of Ms. Jones. On November 17, 2016, at 3:06pm, Plaintiff contacted Mr. Noble via the business phone contact of NYG Studio to inform Mr. Noble of the aforesaid email, while further clarifying the instructions of Plaintiff regarding the Work. It should be noted that at this specific point of the timeline of events brought before this Court, Mr. Noble had not informed Plaintiff of the alleged separate business activities of the Companies.

**17.** Between the dates ranging from November 18, 2011 at 11:55am to November 21, 2011 at 12:18pm, there were multiple phone calls between Plaintiff and Mr. Noble of which Mr. Noble made multiple calls to Plaintiff from a phone number that was and is unfamiliar to Plaintiff. The aforesaid calls from Mr. Noble to Plaintiff took place on November 19, 2011 at 12:38pm; 12:44pm; 2:52pm; and 3:07pm.

**18.** At sometime between the dates ranging from November 19, 2011 to November 22, 2011, there was an email message from Mr. Noble in which there were two (2) graphic files containing the Work. One (1) of the aforesaid graphic files contained the Work with a drop shadow and the other graphic file contained the Work without a drop shadow. It should be noted that Plaintiff recalls an email message from Mr. Noble of which one (1) of the graphic files contained an error and that the error concerned a portion of the Work in which there was coloring outside of the confines of the Work. Upon information and belief, the aforesaid error was intentionally produced by Mr. Noble.

**19.** At sometime between the dates ranging from November 24, 2011 to December 20, 2011, Plaintiff contacted Mr. Noble in regards to a receipt for the Payment. In turn, Mr. Noble sent Plaintiff an email message containing the receipt for the Payment. Plaintiff downloaded the receipt to the hard drive of the computer of the Plaintiff. It should be noted that the aforesaid receipt contained only minimal information.

**20.** Approximately two (2) weeks after receiving the receipt for the Payment, Plaintiff returned to the Residence to find the computer of Plaintiff unresponsive.

**21.** On or about January 1, 2012, Plaintiff received a text message from Mr. Noble which contained wording to the effect of "Let's go." Plaintiff was unaware of the meaning of the aforesaid text message; however, Plaintiff was unsuccessful at gaining any clarity from Mr. Noble. It is unclear whether the failure was due to Mr. Noble not responding to calls of Plaintiff or a response that incited even more ambiguity.

**22.** On December 17, 2012, Plaintiff filed a trademark application for the Work and during the dates ranging from January 1, 2013 to May 27, 2014, Plaintiff made multiple, however, unsuccessful attempts to contact the Owners in regards to the creation of a copyright agreement. It should be noted that Plaintiff only attempted to contact the Owners, in person, at the Location.

**23.** At sometime between the dates ranging from August 1, 2015 to September 21, 2015, Plaintiff was informed by a merchant located near the Location that NYG Studio was no longer operating at the Location.

**24.** On September 22, 2015, Plaintiff filed for copyright protection for the Work and on September 25, 2015, further inquiries with merchants located near the Location led Plaintiff to the discovery of the phone number of Ms. Jones.

**25.** Between the dates ranging from September, 27, 2015 to September 30, 2015, there were multiple phone calls between Plaintiff and Ms. Jones in which Plaintiff requested a written copyright agreement, inter alia. Ms. Jones denied the request of Plaintiff and stated that Mr. Noble owned a separate business and that NYG Studio had no involvement in the matter. Ms. Jones also stated that the contact information of Mr. Noble could not be provided due to an estranged relationship with Mr. Noble. In turn, Plaintiff informed Ms. Jones that the Initial Contact was with NYG Studio and that Plaintiff was never put on notice of any other business arrangement regarding what company was providing the Service. Additionally, Plaintiff informed Ms. Jones that there were ongoing communications through the business contacts of NYG Studio and requested that Ms. Jones provide a statement which attested to the claim that Mr. Noble wasn't employed by NYG Studio on November 17, 2011. In turn, Ms. Jones denied the aforesaid request for a statement and requested that Plaintiff provide proof of the email message sent to NYG Studio on November 17, 2011. It should be noted that Ms. Jones could not assure Plaintiff that an official statement would be provided once Plaintiff showed proof of the aforesaid email message. Therefore, Plaintiff rejected the aforesaid request of Ms. Jones.

**26.** On October 21, 2011, Plaintiff sent an email message to Ms. Jones in which Plaintiff made a subsequent request to obtain a written copyright agreement inter alia. In turn, Ms. Jones denied the aforesaid request.

**27.** On October 23, 2015, Plaintiff received a phone call from Mr. Noble. During the aforesaid phone call, Plaintiff requested that a written copyright agreement be created, inter alia. Mr. Noble verbally agreed to the creation of a copyright agreement written by Plaintiff, under the condition that a copyright release written by Mr. Noble be created. Mr. Noble also stated that Mr. Noble would be in the City of New York temporarily.

**28.** On October 23, 2015, at 11: 02am, Plaintiff sent an email message to Ms. Jones in which Plaintiff informed Ms. Jones of the verbal agreement entered into by Plaintiff and Mr. Noble. Plaintiff also made subsequent request for a written statement which attested to the claim that Mr. Noble was not employed by NYG Studio on November 17, 2011. In response, Ms. Jones denied the aforesaid request of Plaintiff and wrote, "Again I don't know what logo or design you are talking about and now that you are in touch with the original designer that should be more than sufficient to claim ownership."

**29.** On or about October 26, 2015, Plaintiff and Mr. Noble engaged in a phone conversation in which Mr. Noble made an admission to the fact that Plaintiff designed the Work and that Mr. Noble "translated" the Work to an electronic graphic file. Mr. Noble maintained that

Mr. Noble would provide Plaintiff with a copyright release and stated that there was no need to address the issue of authorship or ownership when there's a copyright release.

**30.** On or about October 29, 2015, Plaintiff requested to meet with Mr. Noble and have the copyright agreement signed in person, inter alia. In turn, Mr. Noble stated that such a meeting would require payment from Plaintiff at a rate of ninety dollars ($90.00) an hour and in such a case where Plaintiff and Mr. Noble only met for fifteen (15) minutes, Plaintiff would be charge for an entire hour. Mr. Noble also stated that Plaintiff would have to arrange such a meeting with the agent of Mr. Noble. It should be noted that Mr. Noble also provided Plaintiff with a forwarded copy of what is believed to be the email message referenced in paragraph **18.**

**31.** On November 9, 2015, Plaintiff attempted to contact Mr. Noble via phone; however, Plaintiff received what appeared to be an auto-responder text message from Mr. Noble which read, "Sorry, I'm busy. Call back later."

**32.** On November 10, 2015, Plaintiff attempted to contact Mr. Noble via phone; however, Plaintiff received what appeared to be an auto-responder text from Mr. Noble which read, "I'm in a meeting."

**33.** On November 11, 2015, Plaintiff attempted to contact Mr. Noble via phone; however, Plaintiff received what appeared to be an auto-responder text which read, "I'm driving."

**34.** On December 23, 2015, Mr. Noble requested the email address of Plaintiff for what was perceived to be an attempt to address the issue of authorship.

**35.** On December 26, 2015, Plaintiff responded to the request of Mr. Noble with a text that contained the email address of Plaintiff. In turn, Mr. Noble wrote, "I'll send it first thing tomorrow."

**36.** On April 19, 2016, Plaintiff sent a text message to Mr. Noble regarding the copyright release and in turn, Mr. Noble wrote, "Sorry about that. It skipped my mind. I'll try to get that to you today. If not send me a reminder tomorrow."

**37.** On April 23, 2016, Plaintiff sent a text message as a reminder to Mr. Noble to produce the copyright release. In turn, Mr. Noble wrote, "What is the name of that job and your name again. I can't remember what job it was or who you are specifically." In turn, Plaintiff expressed to the willingness to take legal action while also requested the preferred contact of Mr. Noble for such action. In turn, Mr. Noble replied with email address of Mr. Noble.

**38.** On April 27, 2016, Plaintiff sent an email message to Ms. Jones to renew the willingness of Plaintiff to take legal action in the matter, however, Ms. Jones did not respond to the aforesaid message.

**39.** On October 10, 2016, Plaintiff sent an email message to the Owners in which Plaintiff made a request for the contact information of the Owners for the purpose of listing the aforesaid contact information in this Complaint. Plaintiff also made an attempt to resolve the dispute within

thirty (30) days of the aforesaid email message however, the Owners did not respond.

**40.** On October 15, 2016, Plaintiff contacted the Owners via phone to inform the Owners of the email message referred to in paragraph **39**. In response, Ms. Jones maintained the denial of any involvement in the matter. Contact with Mr. Noble was unsuccessful via phone call; therefore, Plaintiff sent a text message to Mr. Noble at 6:01pm. At 6:27pm, Plaintiff received a phone call from Ms. Doe. The aforesaid phone call from Ms. Doe concerned an unreasonable attempt to resolve the dispute, in which Ms. Doe repeatedly stated that Ms. Doe can get Plaintiff what he wants or wording of similar effect. Ms. Doe also made an admission to having co-occupied the space at the Location. Due to the complication of the matter and Plaintiff not know the true identity of Ms. Doe, Plaintiff abruptly discontinued the discussion with Ms. Doe.

**41.** On October 17, 2016, Mr. Noble attempted to resolve the matter by sending an email message which only contained wording in the body portion of the email and a subsequent email that contained the aforesaid wording in its body portion and an editable attachment containing identical wording thereof. It should be noted that the language contained in the aforesaid emails were poor composed, nonetheless the aforesaid emails were sent with the intention that they release rights in the Work to Plaintiff. In turn, Plaintiff sent an email message to Mr. Noble which informed Mr. Noble of the unsatisfactory manner in which Mr. Noble attempted to resolve the issue. Plaintiff also offered a solution which would've allowed Plaintiff and the Owners to work together in agreeing on the terms of a copyright agreement.

**42.** On October 18, 2016, Plaintiff received an email message from Mr. Noble which disagreed with the claim of the unsatisfactory manner in which the copyright release was presented to Plaintiff.

**43.** On October 19, 2016, Plaintiff sent an email message to Mr. Noble which informed Mr. Noble that it had become obvious that the Owners were conjoin in an effort to deceive Plaintiff and that a copyright agreement would be created on the terms of Plaintiff and that after the expiration of thirty (30) days, Plaintiff would continue to seek the intervention of this Court and that the Owners would incur a fee for the time Plaintiff spent addressing the actions brought before this Court.

**44.** On October 19, 2016, Mr. Noble sent an email message to Plaintiff which request that there be no further efforts of the Plaintiff to contact Mr. Noble and that any further contact would "start procedures for an harassment suit" and that a "court order" is needed for further contact. Mr. Noble also wrote that Mr. Noble would not cooperate with any lawyer representing Plaintiff and stated, "I have supplied you with everything that is required by law."

**45.** Plaintiff forwarded Ms. Jones a copy of all email messages exchanged by Plaintiff and Mr. Noble, ranging from the date of October 17, 2016 to October 19, 2016. All of the aforesaid email messages were sent as the actions incorporated in paragraphs **41-44** occurred. As of the filing of the Complaint, Ms. Jones has not responded to any of the aforesaid email messages.

**46.** Plaintiff has exhausted all means of resolving this dispute and this Complaint has been filed with this Court within three (3) years of the first instance in which Plaintiff perceived any

action by the Owners to be adverse to the sole authorship of Plaintiff. Plaintiff has suffered a controversy which has resulted in damages and the need for an injunction order by this Court. Plaintiff may also accumulate administrative and/or attorney fees as a result of the actions brought before this Court.

## FIRST CAUSE OF ACTION
### [Declaratory Judgment]

**47.** It's established that Plaintiff originated the Work by compiling and arranging a number of preexisting art and then gave NYG Studio the Authorization to produce an electronic graphic file which contained the Work. It was never the intention of Plaintiff to share any rights in the Work with any other party, nor did any party other than Plaintiff contribute anything intellectually to the Work.

**48.** Ms. Jones has denied any involvement in matter and has refused to issue a formal statement regarding Mr. Noble's separate business activities. Additionally, Ms. Jones has referred to Mr. Noble as the "original designer" in an email message, dated October 23, 2015. Therefore, it is conclusive that Ms. Jones has expressed repudiation of the sole authorship of Plaintiff. For the record, the day in which Plaintiff initially perceived the actions of Ms. Jones to be a repudiation of the sole authorship of Plaintiff is October 23, 2015.

**49.** It appears that Mr. Noble may have been signaling repudiation shortly after performing the Service and continued with such negligent behavior throughout the entire time period provided in this Complaint. Additionally, Mr. Noble has provided Plaintiff with a document with the intention that it released rights to the Work to the Plaintiff. Therefore, Mr. Noble's action implies a repudiation of the sole authorship of Plaintiff. For the record, the day in which Plaintiff initially perceived the actions of Mr. Noble to be a repudiation of the sole authorship of Plaintiff is October 26, 2015.

**50.** Thus, an actual controversy exists and is sufficient to warrant the issuance of a declaratory judgment by this Court, for the ownership and sole authorship of the Plaintiff.

## SECOND CAUSE OF ACTION
### [Gross Negligence]

**51.** The Companies were providing business services and being paid for such services; therefore, the Companies are bound by a duty of care between the Companies and the clients of the Companies and in some cases, any potential client of the Companies.

**52.** Ms. Jones claims that Mr. Noble wasn't employed by NYG Studio; however, Ms. Jones should have foreseen the damage a potential client would suffer by not informing such clients that another company which conducted identical business activities as NYG Studio was operating at the Location. Ms. Jones has been uncooperative in this matter after claiming that NYG Studio has no involvement in the actions brought before this Court.

- 8 -

**53.** Mr. Noble's actions have been extremely careless at all times mention in this Complaint. Such actions suggests that Mr. Noble knew of the possibility of a dispute and the exact point of conflict that would arise in such a dispute; nonetheless, Mr. Noble failed to inform Plaintiff of the harm that would be caused by the separate business activities of Kama NY and NYG Studio, coupled with the lack of a copyright agreement.

**54.** It is evident that the Owners were grossly negligent in this matter and as a result, Plaintiff has suffered direct damages from the actions of the Owners. Plaintiff is self-represent in this matter and in an effort to prevent the intervention of this Court; Plaintiff has gone above and beyond in an attempt to resolve the issue. Nonetheless, the Owners insisted on bringing this matter before this Court when it was clear how the matter would be best resolved. Plaintiff informed the Owners of the harm cause by such actions and that in the event such actions continued, the Owners would incur cost for the time Plaintiff spent addressing the issue and that such cost would be calculated on a per hour basis.

**55. Damages.** Thus, damages exist.

## THIRD CAUSE OF ACTION
### [Injunctive Relief]

**56.** Ms. Jones claimed to have no involvement in the matter. Mr. Noble agreed to produce a written copyright agreement and also agreed to provide a copyright release. The Owners have been extremely careless in the matter and cannot disprove any allegation made by Plaintiff in this Complaint. Therefore, Plaintiff is likely to succeed on the merits.

**57.** The conditions between Plaintiff and the Companies can't be reverted to make such conditions as they were before November 17, 2011. The Owners have displayed the sheer willingness to deceive Plaintiff. It would be implausible to think Plaintiff could monitor the Defendants in such a way to prevent a future infringement.

**58.** On November 17, 2011, Plaintiff had minimal experience in producing any form of art where copyright was of importance and therefore, has no knowledge of the copyright laws. Upon the Initial Contact, the Companies had substantial experience in the field of graphics design and New York Graphics Studio produced promotional material which implied one of its services as graphics design. Therefore, the Companies should have understood the complication that might arises from a misunderstanding regarding who was providing the Service coupled with the lack of a copyright agreement. This is common knowledge in the graphics design profession.

**59.** The actions brought before this Court holds the interest of the public at stake. The public holds a strong interest in maintaining the integrity of the copyright system. It is a means to spur creativity in the arts and to protect any property thereof, from a possible infringement. It should not be used as a tool to settle the score in a game thrusted upon and against the owner of such arts.

**60.** Thus, the need for injunctive relief exists.

- 9 -

# JURY DEMANDED

**61.** Plaintiff hereby demands a trial by jury.

# PRAYER FOR JUDGEMENT

**WHEREFORE**, Plaintiff prays for judgment as follows:

**A.** Declaratory judgment against Defendants for which a determination is made in favor of the Plaintiff for the sole authorship and ownership of the Work under the Copyright Act of the United States, 17 U.S.C. §§ 101 et seq.

**B.** Judgment against the Defendants, thereof awarding the Plaintiff injunctive relief, which requires the execution of a written copyright agreement.

**C.** Judgment against the Defendants for which the amount for damages attached hitherto as Exhibit A is awarded to the Plaintiff.

**D.** Judgment against the Defendants for which compensation for filling cost and administrative fees, if any, are awarded to Plaintiff, together with any other relief the Court finds to be just and proper.

**Dated: New York, New York**
**October 22, 2018**


By_____
Draper L Mitchell

160 Madison St., 6e
New York, New York 10002
Phone # (347) 815-3729

Plaintiff, self-represented

- 10 -

## Exhbit A

$3,398.29  total time: 67:51:03

|  | | | | 25-Nov-16 | | |
|---|---|---|---|---|---|---|
| Start time | | | | End time | Time | Amount |
| | | | 1:04:58 AM | 3:14:36 AM | 2:09:38 | $108.33 |
| | | | 8:56:00 AM | 10:58:55 AM | 2:02:55 | $102.50 |
| | | | 12:38:00 PM | 3:02:00 PM | 2:24:00 | $120.00 |
| Total: | 06:36:33 | $330.83 | | | | |

|  | | | | 26-Nov-16 | | |
|---|---|---|---|---|---|---|
| Start time | | | | End time | Time | Amount |
| | | | 3:03:00 PM | 4:57:42 PM | 1:54:42 | $95.83 |
| | | | 7:45:00 PM | 8:24:00 PM | 0:39:00 | $32.50 |
| Total: | 02:33:42 | $128.33 | | | | |

|  | | | | 27-Nov-16 | | |
|---|---|---|---|---|---|---|
| Start time | | | | End time | Time | Amount |
| | | | 2:05:00 AM | 3:56:00 AM | 1:51:00 | $92.50 |
| | | | 12:38:00 PM | 1:29:00 PM | 0:51:00 | $42.50 |
| | | | 3:00:00 PM | 4:02:00 PM | 1:02:00 | $51.67 |
| | | | 4:36:00 PM | 6:01:00 PM | 1:25:00 | $70.83 |
| | | | 8:30:00 PM | 9:01:00 PM | 0:31:00 | $25.83 |
| | | | 10:04:00 PM | 11:16:00 PM | 1:12:00 | $60.00 |
| Total: | 06:52:00 | $343.33 | | | | |

|  | | | | 28-Nov-16 | | |
|---|---|---|---|---|---|---|
| Start time | | | | End time | Time | Amount |
| | | | 4:50:00 PM | 7:18:00 PM | 2:28:00 | $123.33 |
| | | | 8:39:00 PM | 11:31:00 PM | 2:52:00 | $143.33 |
| Total: | 05:20:00 | $266.66 | | | | |

|  | | | | 29-Nov-16 | | |
|---|---|---|---|---|---|---|
| Start time | | | | End time | Time | Amount |
| | | | 5:25:00 PM | 6:47:00 PM | 1:22:00 | $68.33 |
| Total: | 01:22:00 | $68.33 | | | | |

|  | | | | 4-Dec-16 | | |
|---|---|---|---|---|---|---|
| Start time | | | | End time | Time | Amount |
| | | | 11:50:00 AM | 1:54:00 PM | 2:04:00 | $103.33 |
| | | | 8:00:00 PM | 10:53:16 PM | 2:53:16 | $145.00 |
| Total: | 04:57:16 | $248.33 | | | | |

|  | | | 5-Dec-16 | | |
|---|---|---|---|---|---|
| Start time | | | End time | Time | Amount |
| | | | 5:00:00 PM   7:52:00 PM | 2:52:00 | $143.33 |
| Total: | 02:52:00 | $143.33 | | | |

|  | | | 6-Dec-16 | | |
|---|---|---|---|---|---|
| Start time | | | End time | Time | Amount |
| | | | 4:24:00 PM   6:29:00 PM | 2:05:00 | $104.17 |
| Total: | 02:05:00 | $104.17 | | | |

|  | | | 10-Dec-16 | | |
|---|---|---|---|---|---|
| Start time | | | End time | Time | Amount |
| | | | 11:18:00 AM   12:15:41 PM | 0:57:41 | $48.33 |
| | | | 12:51:00 PM   3:15:00 PM | 2:24:00 | $120.00 |
| | | | 2:18:02 PM   2:18:03 PM | 0:00:01 | $0.83 |
| | | | 4:30:00 PM   6:18:00 PM | 1:48:00 | $90.00 |
| | | | 11:58:00 PM   3:12:39 AM | 3:14:39 | $162.50 |
| Total: | 08:24:21 | $421.66 | | | |

|  | | | 16-Dec-16 | | |
|---|---|---|---|---|---|
| Start time | | | End time | Time | Amount |
| | | | 3:18:00 PM   7:52:00 PM | 4:34:00 | $228.33 |
| | | | 8:52:00 PM   12:07:00 AM | 3:15:00 | $162.50 |
| Total: | 07:49:00 | $390.83 | | | |

|  | | | 17-Dec-16 | | |
|---|---|---|---|---|---|
| Start time | | | End time | Time | Amount |
| | | | 1:08:00 PM   2:20:00 PM | 1:12:00 | $60.00 |
| | | | 3:22:00 PM   5:00:00 PM | 1:38:00 | $81.67 |
| Total: | 02:50:00 | $141.67 | | | |

|  | | | 21-Dec-16 | | |
|---|---|---|---|---|---|
| Start time | | | End time | Time | Amount |
| | | | 7:28:00 PM   9:20:00 PM | 1:52:00 | $93.33 |
| Total: | 01:52:00 | $93.33 | | | |

|  | | | 7-Jan-17 | | |
|---|---|---|---|---|---|
| Start time | | | End time | Time | Amount |
| | | | 3:02:00 PM   3:44:00 PM | 0:42:00 | $35.00 |
| Total: | 00:42:00 | $35.00 | | | |

|  | | Start time | | |  |  | | 18-Mar-17 | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  | End time | Time | Amount |
|  |  |  |  |  | 1:58:00 PM | 2:52:43 PM | 0:54:43 | $45.83 |
| Total: | 00:54:43 |  | $45.83 |

Start time

|  | | 22-Mar-17 | | |
|---|---|---|---|---|
|  | End time | Time | Amount |
| 6:22:47 PM | 7:05:11 PM | 0:42:24 | $35.83 |

Total:   00:42:24          $35.83

Start time

|  | | 26-Mar-17 | | |
|---|---|---|---|---|
|  | End time | Time | Amount |
| 11:32:00 AM | 12:15:00 PM | 0:43:00 | $35.83 |

Total:   00:43:00          $35.83

Start time

|  | | 8-Apr-17 | | |
|---|---|---|---|---|
|  | End time | Time | Amount |
| 7:02:00 PM | 10:50:44 PM | 3:48:44 | $190.83 |

Total:   03:48:44          $190.83

Start time

|  | | 27-Jul-17 | | |
|---|---|---|---|---|
|  | End time | Time | Amount |
| 1:00:00 PM | 2:00:00 PM | 1:00:00 | $50.00 |

Total:   01:00:00          $50.00

Start time

|  | | 18-Oct-18 | | |
|---|---|---|---|---|
|  | End time | Time | Amount |
| 6:45:00 PM | 7:35:37 PM | 0:50:37 | $42.50 |

Total:   00:50:37          $42.50

Start time

|  | | 19-Oct-18 | | |
|---|---|---|---|---|
|  | End time | Time | Amount |
| 7:57:00 PM | 8:43:33 PM | 0:46:33 | $39.17 |
| 9:37:00 PM | 10:41:06 PM | 1:04:06 | $54.17 |

Total:   01:50:39          $93.34

Start time

|  | | 20-Oct-18 | | |
|---|---|---|---|---|
|  | End time | Time | Amount |
| 7:24:00 PM | 8:45:49 PM | 1:21:49 | $68.33 |

Total:   01:21:49          $68.33

|             |            | 21-Oct-18 |         |
|-------------|------------|-----------|---------|
| Start time  | End time   | Time      | Amount  |
| 6:34:00 PM  | 7:55:18 PM | 1:21:18   | $68.33  |
| 9:37:00 PM  | 10:38:57 PM| 1:01:57   | $51.67  |

Total:   02:23:15          $120.00